UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO. 5:08-145-KKC

UNITED STATES OF AMERICA
ex rel. ALISIA ROBINSON-HILL and
DAVID A. PRICE,                                                    PLAINTIFFS

v.                          **MEMORANDUM OPINION AND ORDER**

NURSES' REGISTRY AND HOME HEALTH CORP.,
LENNIE G. HOUSE, and VICKI HOUSE                                   DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendants' Motions to Dismiss the Complaint in

Intervention [DE 50], Defendants' Motion to Dismiss the *qui tam* Complaint [DE 59], and

Relators Motion for Leave to File Amended Complaint. [DE 63].  For the following reasons,

Defendants' Motion to Dismiss the Complaint in Intervention is **GRANTED** in part and

**DENIED** in part, Defendants' motion to dismiss the *qui tam* Complaint is **GRANTED** in part

and **DENIED** in part, and Relators' Motion for Leave to File Amended Complaint is

**GRANTED.**

## INTRODUCTION

This is a False Claims Act ("FCA") case that started as a *qui tam* action filed by Relators,

Alisia Robinson-Hill and David Price, against their former employer, Defendant Nurses' Registry

and Home Health Corp ("Nurses' Registry").  The United States intervened and alleges that

Defendants submitted false and fraudulent claims to the government by upcoding patients'

symptoms and providing medically unnecessary therapy visits to obtain more and larger

reimbursements from Medicare.  The Government's Complaint in Intervention added Lennie and

Vicki House as defendants; added common law claims of fraud, unjust enrichment, and payment

by mistake based on the upcoding claims; and added claims alleging that Defendants provided

remuneration to physicians to induce or reward referrals. Although the Government's Complaint

superseded the *qui tam* Complaint, Defendants moved to dismiss both the *qui tam* Complaint

[DE 59] and the Complaint in Intervention. [DE 50].

## BACKGROUND

Nurses' Registry is a Kentucky corporation that provides home health care services.

Lennie House is the President, Chief Executive Officer, and sole owner of Nurses' Registry.  His

wife, Vicki House, is the secretary of Nurses' Registry.  The Houses are co-directors of Nurses'

Registry's governing board.  Relators, Alisia Robinson-Hill and David A. Price, are former

Nurses' Registry employees.

On March 18, 2008, Relators filed an action against Nurses' Registry pursuant to the

FCA's *qui tam* provision, alleging extensive Medicare fraud.  The Relators' Complaint alleged

that Nurses' Registry upcoded the severity of patients' medical conditions in order to bill

Medicare for more expensive services, provided services to patients who had no medical need for

such services, and retained Medicare home health patients who no longer needed such services.

[DE 1 at ¶¶ 49-98].  The Relators also brought claims for retaliation alleging that they were

discharged for complaining to Nurses' Registry management about these improper practices and

for refusing to cooperate with NR's allegedly fraudulent practices.  The Relators' Complaint did

not identify a specific false claim for payment submitted to the government, but detailed a

fraudulent scheme to defraud the government and identified employees and officers involved in

that scheme.  As required by the FCA, the Relators' Complaint was filed under seal to allow the

2

United States time to investigate the claims and possibly intervene.

The United States elected to intervene [DE 23] and on September 2, 2011, filed a Complaint in Intervention. [DE 46]. The Complaint in Intervention reasserted Relators' allegations of upcoding, improper recertification of patients, and providing unnecessary medical services but added detail and clarity to Relators' allegations by identifying particular false claims for payment submitted to the government as representative samples of Nurses' Registry's alleged scheme. The Government added common law claims of fraud, unjust enrichment, and payment by mistake arising out of the same conduct. The Complaint in Intervention also added new allegations that Nurses' Registry provided remuneration or kickbacks to physicians and other patient referral services in violation of the Anti-Kickback Statute, 42 U.S.C. §1320a - 7b(b), and the Stark Law, 42 U.S.C. §1395nn. The Government maintains that if such kickbacks led to the filing of Medicare claims, those claims are false and fraudulent. Finally, the Complaint in Intervention added Lennie House and Vicki House as individual defendants based on their alleged personal participation in the scheme to defraud Medicare.

## STANDARD OF REVIEW

To survive a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 648 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations that raise the "sheer possibility that a defendant acted unlawfully" are insufficient. *Id*. A complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id*. A complaint that "offers 'labels or conclusions' or 'a formulaic recitation of the

3

elements of a cause of action will not do.'"  *Id*.  (quoting *Twombly*, 550 U.S. at 555).

Generally speaking, a Rule 12(b)(6) motion to dismiss is not an appropriate vehicle for raising an affirmative defense, such as the statute of limitations, because plaintiffs "need not anticipate and attempt to plead around all potential defenses.  Complaints need not contain *any* information about defenses and may not be dismissed for that omission."  *Xechem, Inc. v. Bristol-Myers Squibb Co*., 372 F.3d 899, 901 (7th Cir. 2004) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)).  A plaintiff may have an "obligation to plead facts in avoidance of the statute of limitations defense [if] 'it is apparent from the face of the complaint that the time limit for bringing the claim[s] has passed.'"  *Bishop v. Lucent Techs., Inc*., 520 F.3d 516, 518 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc*., 958 F.2d 742, 744 (6th Cir. 1992)).  In such a case, a motion to dismiss may appropriately be grounded upon a plaintiff's failure to plead tolling, relation back, or other facts showing the claims are not barred by the statute of limitation.

## DISCUSSION

The False Claims Act imposes civil liability on any person who "knowingly presents or causes to be presented to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1) & (3) (2006).[1]  "To promote enforcement of the statute, Congress has directed that an FCA action may be initiated in one of two ways."  *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 506 (6th Cir. 2009). The Government may itself pursue a civil action, § 3730(a), or a private individual (called a

---

[1] The False Claims Act was amended in 2009 by the Fraud Enforcement and Recovery Act ("FERA"). Pub. L. 111-21, May 20, 2009, 123 Stat. 1621.  Except when otherwise noted, the Court will cite the FCA's pre-FERA statutory language, because the alleged conduct occurred before May 20, 2009, and FERA "appl[ies] to conduct on or after the date of enactment [May 20, 2009]." Pub. L. 111-21 §4(f), 123 Stat. 1625.

relator) may bring a *qui tam*[2] action on behalf of the Government. § 3730(b)(1). *See Rockwell Intl. Corp. v. United States*, 549 U.S. 457, 463 (2007).

Before bringing a *qui tam* suit, a Relator must serve the complaint on the Government, and the complaint remains under seal for at least 60 days.  § 3730(b)(2).  During this time period, the Government may take over the case and "proceed with the action, in which case the action shall be conducted by the Government." § 3730(b)(4)(A).  When the Government "proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." § 3730(c). To incentivize individuals knowing of Government fraud to file *qui tam* claims, the FCA awards Relators fifteen to twenty-five percent of any eventual recovery in cases in which the government intervenes.  § 3730(d).

## I.  MOTION TO DISMISS THE UNITED STATES' COMPLAINT IN INTERVENTION

Nurses' Registry  moves to dismiss the Government's Complaint in Intervention or portions of the Complaint as untimely.  The FCA's statute of limitations provisions were amended by FERA and it is necessary to determine whether those amendments apply here.

### A.     False Claims Act Statute of Limitations

The standard limitations period for any claim alleging a violation of the FCA is, at a minimum, six years from the date of the violation.  31 U.S.C. § 3731(b)(1). " An FCA claim accrues each time a false claim is submitted."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d 389, 400 (D. Mass. 2007).

The FCA allows extensions of the six-year limitations period in two circumstances.  First,

---

[2] *Qui tam* is short for the Latin phrase "*qui tam pro domino rege quam pro se ipso in hac parte sequitur,*" which means "who pursues this action in our Lord the King's behalf as well as our own."  *Rockwell*, 549 U.S. at 463 n. 2.

the FCA has a tolling provision that is not relevant here. 31 U.S.C. § 3731(b)(2). Second, "[f]or statute of limitations limitations purposes," the Government's complaint in intervention "relate[s] back to the filing date of the complaint of the person who originally brought the action to the extent that the claim of the Government arises out of the conduct, transactions or occurrences set forth, or attempted to be set forth, in the prior complaint of that person." 31 U.S.C. § 3731(c) (2010); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.,* 608 F.3d 871, 878-82 (D.C. Cir. 2010) (per curiam).

Section 3731(c), the relation back provision, was added to the FCA as part of FERA. "Unlike other sections of FERA, Congress specifically stated that this provision 'shall apply to cases pending on the date of enactment.'" *United States v. Caremark, Inc.*, 634 F.3d 808, 818 (5th Cir. 2011) (quoting Pub.L. No. 111–21, § 4(f), 123 Stat. 1617 (2009)). Nurses' Registry argues that the term "cases" encompasses only cases in which the Government intervened and excludes *qui tam* cases. [DE 50-2 at 19]. Under Nurses' Registry's proposed reading, § 3731(c) would not apply here because the Government's complaint was not pending on the date of enactment. This reading is inconsistent with the text of statute and Nurses' Registry provides no legal support for its argument.

Courts have routinely applied FERA's statute of limitations and relation back provision to cases in which the *qui tam* case, but not the Government's complaint in intervention, was pending when FERA was enacted. *See United States ex rel. Miller v. Bill Harbert, Int'l Constr., Inc.*, 608 F.3d 871, 879-80 (D.C. Cir. 2010) (per curiam); *United States v. Quad City Prosthetic, Inc.*, No. 06-4015, 2011 WL 3273142, at *4, *10 (C.D. Ill. Aug. 1, 2011) (applying FERA's statute of limitations when *qui tam* complaint was filed March 20, 2006, and the Government

6

intervened on November 17, 2010);  *United States ex rel. Frascella v. Oracle Corp.*, 751 F.

Supp. 2d 842, 846, 853-54 (E.D. Va. 2010) (applying FERA's statute of limitations when *qui*

*tam* filed May 29, 2007, and Government intervened on July 29, 2010).  "Cases" means FCA

cases.  The statute does not distinguish between a *qui tam* case and a Government FCA case.

The relation back doctrine in § 3731(c) applies here because this case was pending on the date of

FERA's enactment.

      Within this same context, Defendants assert a vague constitutional challenge to the

application of § 3731(c) on grounds that the Government had an obligation to act when it knew

of fraud and "could not simply sit by and allow punitive penalties to accrue against Nurses'

Registry."  [DE 50-2 at 16].  Defendants cite no law in support of this argument and conceded at

oral argument that it was being made only to preserve the issue for appeal.  Moreover, a similar

argument has been rejected by the United States Court of Appeals for the  District of Columbia.

*Bill Harbert, Int'l. Constr., Inc.*, 608 F.3d at 879-80.

      Next, Defendants argue that the Government's Complaint cannot relate back to this

specific *qui tam* Complaint for two reasons.  First, Defendants argue that the *qui tam* Complaint

was not a sufficient placeholder for relation back purposes because it did not satisfy Fed. R. Civ.

P. 9(b).  As an extension of that argument, Defendants maintain that this Court is without

jurisdiction over the Government's claims because the allegations in the Complaint are based on

information that had already been publicly disclosed.  Second, Defendants argue that applying

FERA's statute of limitations retroactively violates the Ex Post Facto Clause of the United States

Constitution.

a.      Alleged Defects in Relators' Complaint Do Not Prohibit Relation Back

As stated above, Defendants argue that the Relators' Complaint is fatally defective and

should be dismissed because the *qui tam* Complaint does not plead fraud with particularity as

required by the civil rules and because the Relators are not original sources as defined in 31

U.S.C. § 3731(e)(4).  They maintain that, because the *qui tam* Complaint is fatally defective, the

Government's Complaint cannot relate back to it.  Although the arguments about the validity of

the *qui tam* Complaint will be addressed in Part II of this Opinion, Defendants' success or failure

on these issues is irrelevant to whether the Government's Complaint relates back to the *qui tam*

Complaint for statute of limitations purposes.

Section 3731(c) does not require that an individual's complaint state a viable claim in

order for the Government to be able to relate back to it.  The statute focuses on whether the

Government's complaint is based on the same factual allegations contained in the prior

complaint. The Government's complaint relates back to a prior complaint if "the claim of the

Government arises out of the conduct, transactions or occurrences set forth, or *attempted to be set*

*forth*, in the prior complaint of that person." § 3731(c) (emphasis added).  The statute itself

contemplates that the prior complaint may not properly set forth a claim but only "attempt" to

state a claim.  The issue is not whether the prior complaint would survive a motion to dismiss,

but whether the Government's complaint "arises out of the conduct, transactions or occurrences

set forth or attempted to be set forth in the prior complaint."  § 3731(c); *see also United States ex*

*rel. Tillson v. Lockheed Martin Energy Sys., Inc.*, No. Civ.A. 5:00CV-39-M, 2004 WL 2403114,

at *20 (W.D. Ky. Sept. 30, 2004) (analyzing relation back under Rule 15 and holding that "the

test . . . is not whether the original complaint alleged all of the facts necessary to prove the later

8

asserted cause of action; it is simply whether the two claims involved common conduct, transactions, or occurrences.")

Defendants cite no cases that prohibit a Government complaint from relating back to a *qui tam* complaint because the *qui tam* complaint was either dismissed because the claims weren't pled with particularity as required by Federal Rules of Civil Procedure 9(b) or  because the Relators' claims had previously been publicly disclosed.  It is indeed possible for a complaint to be so "egregiously defective" that it "neither commences the action for purposes of the statute of limitations nor serves as a relation back placeholder," *In re Pharmaceutical Indus. Average Wholesale Price Lit.*, 498 F. Supp. 2d 389, 399 (D. Mass. 2007).  The *qui tam* complaint here, however, is far from "egregiously defective."

To be "egregiously defective," a complaint must fail to confer jurisdiction on the court by having deficiencies far greater than failing to properly state a cause of action or to satisfy pleading standards.  For example, if a "plaintiff deliberately selects an improper forum, makes no effort to serve the defendant in that forum . . . and never had any intention of prosecuting the claim in the forum of filing [then] there is no analytical basis for the filing to toll the statute of limitations" and the complaint is fatally defective.  *United States ex rel. Health Outcomes Tech. v. Hallmark Health Sys.*, 409 F. Supp. 2d 43, 49-50 (D. Mass. 2006) (quoting *United States v. St. Joseph's Reg'l Health Ctr.*, 240 F. Supp. 2d 882, 891-92 (W.D. Ark. 2002)).  The alleged defects in the complaint here fall far short of the types of defects that fail to confer jurisdiction on the court and render the complaint "egregiously defective."

Defendants argue that, because Relators are not original sources of the information in their complaint, the *qui tam* Complaint failed to confer jurisdiction on this Court under *Rockwell*

*Int'l Corp. v. United States*, 549 U.S. 457, 467 (2007).  Although the public disclosure bar is jurisdictional, *Rockwell* made clear that, if the United States intervenes and the relator is dismissed as a result of the public disclosure bar, the action is treated as if it was originally brought by the Attorney General of the United States and the court maintains jurisdiction over the case.  *Rockwell*, 549 U.S. at 478 ("An action originally brought by a private person, which the Attorney General has joined, becomes an action brought by the Attorney General once the private person has been determined to lack the jurisdictional prerequisites for suit.").  This logic is consistent with a key tenent of the FCA that, even though private persons are permitted to initiate a suit on behalf of the United States, the United States has the option of intervening and taking over the case—and will not be prejudiced by anything the "relator may have done or omitted to do." *United States v. Pittman*, 151 F.2d 851, 853 (5th Cir. 1945); *see also United States v. Crescent City EMS, Inc.*, 1994 WL 518171, at *8 (E.D. La. Sept. 21, 1994) (recognizing that "once the United States intervenes, the Court has jurisdiction to hear the United States' claim independent of anything the relator did or failed to do.").  Defendants ask this Court to apply a limitation to § 3731(c) that is not found in the statute, has not been applied by any other court, and is inconsistent with the text of the statute.

      b.     <u>Applying FERA's Statute of Limitations Does Not Violate Ex Post Facto Clause</u>

Defendants' Motion to Dismiss the Complaint in Intervention argues in passing that retroactively applying ERA's statute of limitations would violate the Ex Post Facto Clause of the United States Constitution.  [DE 50-2 at 20-21].  In their reply brief, Defendants expand upon this argument. [DE 55 at 12-13].  Although this Court may decline to decide underdeveloped constitutional questions, *Bill Harbert Int'l Constr. Co.*, 608 F.3d at 879, applying FERA's statute

of limitations does not violate the Ex Post Facto Clause because it only extended an unexpired statute of limitations.

Courts have disagreed as to whether FERA's substantive changes to the FCA violate the Ex Post Facto Clause. *Compare United States ex rel. Sanders v. Allison Engine Co., Inc.*, 667 F. Supp. 2d 747, 758 (S.D. Ohio 2009) ("[A]pplication of this retroactivity language to these Defendants would violate the Ex Post Facto Clause of the U.S. Constitution.") *with United States ex rel. Drake v. NSI, Inc.*, 736 F. Supp. 2d 489, 499-500 (D. Conn. 2010) (finding "that the FCA is not sufficiently punitive in nature and effect so as to warrant application of the Ex Post Facto Clause."). The Court need not weigh in on that debate in this case because the only portion of FERA that the Government seeks to apply retroactively is the extension of an unexpired limitations period.

"[I]t is well settled law that . . . enlarg[ing] the limitations period does not violate the Ex Post Facto Clause so long as the statute is passed before the given prosecution is barred." *United States v. Gibson*, 490 F.3d 604, 609 (7th Cir. 2007) (citing *Stogner v. California*, 539 U.S. 607, 618 (2003)). The Government seeks to assert claims against Defendants accruing on January 1, 2004, and later. The earliest claim would have expired on January 1, 2010. 31 U.S.C. § 3731(b)(1). The FERA amendments were enacted on May 20, 2009—before the expiration of the original limitations period. Therefore, applying the relation back doctrine enacted in FERA does not violate the Ex Post Facto Clause.

    B.    <u>Application of Relation Back Doctrine</u>

The Government's claims "relate back to the filing date of the complaint of the person who originally brought the action" if "the claim of the Government arises out of the conduct,

transactions or occurrences set forth, or attempted to be set forth, in the prior complaint of that

person." § 3731(c).  Below, the Court has set forth its analysis of both the claims that relate back

to the *qui tam* complaint and those that do not.

       C.      <u>Claims That Relate Back to the *Qui Tam* Complaint</u>

      The Government's FCA claims against Nurses' Registry related to allegations of

upcoding, falsification of records, and providing services to those who do not qualify relate back

to the *qui tam* Complaint.  There is little debate that the Government's FCA claims are the same

claims based on the same conduct alleged in the *qui tam* Complaint.  The Government seeks to

pursue only those claims that accrued on or after January 1, 2004, because it settled claims that

accrued prior that that date.  The Government's FCA claims against Nurses' Registry of

upcoding, falsification, and providing unnecessary services accruing on or after January 1, 2004,

are timely because they are within six years of the filing of the Relators' Complaint on March 18,

2008.

      Second, the Government's common law claims of fraud, unjust enrichment and payment

by mistake against Nurses' Registry based on the claims upcoding, falsification of records, and

providing unnecessary services relate back to the *qui tam* Complaint.  Common law claims relate

back to the *qui tam* Complaint if those claims arise out of the conduct set forth in the Relators'

complaint. Section 3731(c) allows the Government's compliant in intervention to "add any

additional claims" and it is the "government pleading" that relates back, not just the

Government's FCA claims.  § 3731(c); *United States ex re. Frascella v. Oracle Corp.*, 751 F.

Supp. 2d 842, 853-54 (E.D. Va. 2010).

      Common law fraud is a tort and subject to a three-year statute of limitations.  28 U.S.C. §

12

2415 (b); *United States v. Intrados/Int'l Mgmt. Group*, 265 F. Supp. 2d 1, 14 (D.D.C. 2002)

Therefore, the Government's common law fraud claims against Nurses' Registry accruing on or

after March 18, 2005, and arising out of the conduct alleged in the *qui tam* Complaint are timely.

Payment by mistake and unjust enrichment are subject to a six-year statute of limitations.

28 U.S.C. § 2415(b); *Intrados/Int'l Mgmt. Group*, 265 F. Supp. 2d at 13-14. Defendants argue

that these claims should have a three-year limitations period but concede that their position is

unsupported by the case law [DE 50-2 at 22]. The Government again limits itself to claims

accruing on or after January 1, 2004, based on the prior settlement. With a six-year limitations

period, all of the Government's payment by mistake and unjust enrichment claims against

Nurses' Registry arising out of the conduct alleged in the *qui tam* Complaint are timely.

      a.      <u>Claims That Do Not Relate Back to the *Qui Tam* Complaint</u>

          (1)      Claims Against Nurses' Registry

The Government concedes that its claims based on illegal remuneration and Stark Law or

Anti-Kickback Law violations do not relate back to the *qui tam* Complaint. The Government's

FCA claims against Nurses' Registry relating to Defendants' illegal remuneration are subject to a

six-year statute of limitations and are timely to the extent those FCA violations accrued on or

after September 2, 2005.

The Government's common law fraud claims against Nurses' Registry relating to illegal

remuneration are subject to a three-year statute of limitations and are timely to the extent they

accrued on or after September 2, 2008. The Government's payment by mistake and unjust

enrichment claims against Nurses' Registry arising out of illegal remuneration are timely to the

extent they accrued on or after September 2, 2005.

(2)     Claims Against Lennie and Vicki House

Lennie and Vicki House were not named as defendants in the *qui tam* Complaint. Because they were not named, the Government concedes that claims against Lennie and Vicki House cannot relate back to the *qui tam* Complaint.

Accordingly, the FCA, unjust enrichment, and payment by mistake causes of action against the Houses are timely only to the extent they accrued on or after September 2, 2005, and common law fraud claims are timely only to the extent they accrued on or after September 2, 2008.

b.     <u>Motion to Dismiss Common Law Claims Against Lennie and Vicki House</u>

Defendants argue that the Government's common law claims for unjust enrichment and payment by mistake against Lennie and Vicki House must be dismissed because no money was paid by the government directly to Lennie or Vicki House.  To recover based on unjust enrichment and payment by mistake theories, it is not necessary that money has been paid directly to individual defendants if the individuals received payment indirectly through his or her control of a company that received those improper payments and the individuals participated in the wrongful conduct.  *See United States ex rel. Roberts v. Aging Care Home Health, Inc*., 474 F. Supp. 2d 810, 821 (W.D. La. 2007); *United States v. Rogan*, 459 F. Supp. 2d 692, 727-28 (N.D. Ill. 2006); *United States ex rel. Piacentile v. Wolk*, 1995 WL 20833, at *5 (E.D. Pa. Jan 17, 1995).

The claims against Lennie and Vickie House survive a motion to dismiss because the Government alleges that Lennie and Vicki House actively participated in the scheme to defraud Medicare and that the Houses used Nurses Registry's revenues and earnings for their own.  [DE

14

46 ¶¶ 60, 129, 141-43].

## II.  MOTION TO DISMISS THE *QUI TAM* COMPLAINT

Nurses' Registry  raises three arguments in support of its motion to dismiss the *qui tam*

Complaint.  First, that the *qui tam* Complaint's FCA claims must be dismissed because fraud is

not pled with particularity.  Second, Nurses' Registry contends that the Court lacks jurisdiction

over the *qui tam* Complaint because the action is based upon a public disclosure and that

Relators are not original sources.  Finally, Nurses' Registry asserts that the Relators fail to state a

proper retaliation claim.  Each argument will be addressed in turn.

### A.      Pleading Fraud With Particularity

Nurses' Registry argues that the *qui tam* Complaint should be dismissed pursuant to Fed.

R. Civ. P. 9(b), because the Relators do not allege fraud with particularity.  Nurses' Registry is

correct that the *qui tam* Complaint does not name a specific false claim that was submitted to the

government and "pleading an actual false claim with particularity is an indispensable element of

a complaint that alleges a FCA violation in compliance with Rule 9(b)."  *United States ex rel.*

*Bledsoe v. Cmty Health Sys. Inc.*, 501 F.3d 493, 504 (6th Cir. 2007).

Nurses' Registry's argument is misplaced, however, because the Government's

Complaint in Intervention is now the operative pleading and supersedes the *qui tam* Complaint.

*See United States ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 648 (S.D.N.Y

2011); *United States ex rel. Magee v. Lockheed Martin Corp.*, No. 1:09-CV-324, 2010 WL

972214, at *2 (S.D. Miss. March 12, 2010) ("Once the Government intervenes . . . Relator has no

separate free-standing FCA cause of action.").  There is simply no Rule 9(b) issue to analyze

with respect to the *qui tam* Complaint because the *qui tam* Complaint has been superseded by the

Complaint in Intervention.  In each case cited by Nurses' Registry, the Government declined to intervene and the *qui tam* complaint was the operative pleading.  *E.g.*, *United States ex rel. Bledsoe v. Cmty. Health Sys. Inc.*, 501 F.3d 493, 500 (6th Cir. 2007) ("[T]he government had declined to intervene in Relator's suit, but instead had pursued settlement negotiations."); *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 501 (6th Cir. 2008) ("[T]he United States declined to intervene."); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006).

Although Defendants' arguments in favor of Rule 9(b) dismissal are misplaced, the *qui tam* Complaint's FCA claims must be dismissed to the extent that the Government's Complaint supersedes those claims.  *See e.g.*, *Feldman*, 808 F. Supp. 2d at 648 (dismissing relators' complaint for want of standing because it was "superseded in its entirety by the Government's complaint").  Dismissal of the *qui tam* Complaint's FCA claims does not, however, diminish the Relators' statutory rights under § 3730, including, their entitlement to fifteen to twenty-five percent of any monetary award recovered by the Government in this action.  31 U.S.C. § 3730(d); *Feldman*, 808 F. Supp. 2d at 648; *Magee*, 2010 WL 972214, at *3 ("Relator remains a party to these claims and is entitled to participate pursuant to the statute, subject to the limitations it imposes.")

Here, the United States intervened on all FCA issues raised in the Relators' Complaint except for the allegations relating to fraudulent co-payments waivers.  [DE 29].  The Relators seek to file an amended Complaint that would omit this claim and the United States consents to the Relators' voluntary dismissal of the co-payment claim.  [DE 77].  Defendants object to Relators' motion for leave to file an amended complaint arguing that the Court lacks jurisdiction

over the *qui tam* Complaint for the same reasons it seeks to dismiss the Relators from this action. As discussed below, the Court has jurisdiction over this case and Relators need not comply with Rule 9(b) because their complaint is not the operative complaint.  Therefore, the Court will **GRANT** Relators' motion to file an amended Complaint.  The Relators' earlier Amended Complaint has been entirely superseded by the Government's Complaint and no longer asserts a separate and free-standing FCA cause of action.

      B.       <u>Public Disclosure Rule / Original Source Rule</u>

Defendants claim that the *qui tam* Complaint must be dismissed for lack of jurisdiction because of the FCA's public disclosure bar which deprives a court of jurisdiction if Relators are not original sources of information that has not previously been disclosed to the public.  It is important to reiterate that the *qui tam* Complaint's FCA claims have been superseded by the Government's Complaint and dismissed.  At issue is not whether Defendants must defend the alleged violations of the FCA, but whether the Relators are permitted to share in any potential recovery in accordance with 31 U.S.C. § 3730(d).

In arguing that Relators should be excluded from any potential recovery because of the public disclosure bar, Defendants consistently cite facts outside of the *qui tam* Complaint.  On a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  *United States ex rel. Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  At this stage of the litigation, the Court will deny Defendants' motion to dismiss based on the public disclosure bar. Because of the complexities of the law, this matter is better left for consideration on summary

judgment.

Over the years, Congress has amended the FCA in an attempt to encourage individuals knowing of government fraud to bring the information forward while discouraging parasitic suits where private plaintiffs provide little assistance to the Government but share in the reward. "The original version of the FCA, enacted in 1863, allowed anyone to bring a *qui tam* action and receive 50 percent of the amount recovered." *United States ex rel. McKenzie v. Bellsouth Telecomm., Inc.*, 123 F.3d 935, 938 (6th Cir. 1997) (citing S. Rep. No. 345, 99th Cong., 2d Sess. 8-10 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273.) This provision led to abuse where *qui tam* plaintiffs would bring suits "based entirely upon information contained in a government indictment." *McKenzie*, 123 F.3d at 938. After the Supreme Court affirmed this practice in *United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943), Congress amended the FCA to preclude actions "based on evidence or information the government had when the action was brought." *United States ex rel. Stinson v. Prudential Ins. Co.*, 944 F.2d 1149, 1153 (3rd Cir. 1991) (quoting 31 U.S.C. § 3730(b)(4) (1982) (superseded)). This over-correction resulted in "claims . . . being barred even in cases where the *qui tam* plaintiff supplied the information to the government before filing the claim." *McKenzie*, 123 F.3d at 938 (citing *United States ex rel. Wisconsin v. Dean*, 729 F.2d 1100, 1106 (7th Cir. 1984)).

In 1986, Congress again amended the FCA "to encourage any individual knowing of Government fraud to bring that information forward." *McKenzie*, 123 F.3d at 938 (quoting S. Rep. No. 345, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.A.N. 5266). It is the 1986 statutory language that applies here.

The FCA states that:

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional administrative, or [General] Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

Section 3730(e)(4)(A)'s jurisdictional bar has three elements.  First, there must be a "public disclosure of fraud." *Poteet*, 552 F.3d at 511.  Second, "the allegations in the instant case [must be] 'based upon' the previously disclosed fraud." *Id.*  If both of these elements are met, then the Court must determine "whether the relator nonetheless qualifies as an 'original source' under § 3730(e)(4)(B), in which case the suit may proceed." *Poteet*, 552 F.3d at 511 (quoting *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 974 (6th Cir. 2005)).

The FCA defines an original source as "an individual: (1) with direct and independent knowledge of the information on which the allegations are based; and (2) who has voluntarily provided the information to the government before filing an action under the FCA which is based up the information." *Poteet*, 552 F.3d at 515; *see also* § 3730(e)(4)(B).  The Sixth Circuit requires that the realtor "must also provide the government with the information upon which the allegations are based prior to any public disclosure." *Id.*  The Supreme Court may have interpreted the FCA in a way that overrules this third element. *See Rockwell*, 679 U.S. at 470; *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 838 (D.C. Cir. 2012) (reh'g en banc denied July 27, 2012).  The Court need not address this question, however, because accepting Relators' version of the facts as true and drawing all inferences in their favor,

19

Defendants have failed to show that the *qui tam* Complaint is based upon a public disclosure of fraud.

      C.    <u>Public Disclosure of Fraud</u>

For the public disclosure rule to apply, the "disclosure must have (1) been public, and (2) revealed the same kind of fraudulent activity against the government as alleged by the relator." *Poteet*, 552 F.3d at 511. Section 3730(e)(4)(A) characterizes a disclosure of fraud as public if it appears in "the news media" or is made "in a criminal, civil, or administrative hearing, [or] in a congressional, administrative, or [General] Accounting Office report, audit or investigation."

"[A] public disclosure reveals fraud if 'the information is sufficient to put the government on notice of the likelihood of related fraudulent activity.'" *Poteet*, 552 F.3d at 512 (quoting *United States ex rel. Gilligan v. Medtronic, Inc.*, 403 F.3d 386, 389 (6th Cir. 2005)). The key issue is whether "enough information exists in the public domain to expose the fraudulent transaction or the allegation of fraud." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 975 (6th Cir. 2005).

Two types of disclosures have been found sufficient to put the government on notice of fraud. *Poteet*, 552 F.3d at 512. First, "a public disclosure that describes a transaction that includes both the state of the facts as they are plus the misrepresented state of facts," *id.,* because "[w]hen the misrepresented state of facts and a true state of facts have been disclosed, there is enough information in the public domain to give rise to an inference of impropriety," *Gilligan*, 403 F.3d at 389 (internal quotation marks omitted.). Second, "a direct allegation of fraud . . .

20

regardless of its specificity is sufficient to put the government on notice of the potential existence of fraud." *Poteet*, 552 F.3d at 512.

Nurses' Registry argues that the 2005 Settlement Agreement[3] between Nurses' Registry and the United States[4] was a public disclosure of the allegations against Nurse Registry.  The Settlement Agreement addresses "civil claims . . . against Nurses' Registry for engaging in the following conduct," referred to as the "Covered Conduct." [DE 50-3, Settlement Agreement at 1]. The Covered Conduct includes "submitting unallowable PPS claims and upcoded PPS claims to Medicare and Medicaid for home health services to patients, some of whom were not homebound for the years 1997, 1998, 1999, 2000, 2001, 2002, and 2003." [DE 50-3, Settlement Agreement at 2]. In the Settlement Agreement, "[a]ll parties consent to the United States' disclosure of the Agreement, and information about this Agreement, to the public." [DE 50-3 at ¶ 23.]

Relators argue that the Settlement Agreement was not made publicly available through an affirmative act of disclosure and was not placed in the public domain. From the Relators' Complaint, it is unclear whether there was an affirmative act of disclosure.  It may be reasonable to assume that because the Settlement Agreement was cited and attached to Relators' Complaint, it was made public through the affirmative act of disclosure.  However, the Complaint contains no information about how or if the Settlement Agreement was publicly disclosed.  On this record, and at this stage of the proceeding, the Court finds that Defendants have not established that the

---

[3] Nurses' Registry argues in its Reply brief that the Office of the Inspector General (OIG) Semiannual Report to Congress also publicly disclosed the alleged fraud, but for the reasons stated in the Order granting Relators' Motion to Strike entered contemporaneously with this Opinion, this evidence is not considered.

[4] Acting through the Department of Justice on behalf of the OIG-HHS of the Department of Health and Human Services (HHS)

Settlement Agreement meets the definition of a public disclosure §3730(e)(4)(A).  The Court will reconsider this matter if raised on summary judgment and supported by facts developed during discovery.

      D.      <u>*Qui Tam* Complaint Based Upon Disclosed Fraud</u>

As the Sixth Circuit Court of Appeals noted in *Poteet,* after finding a discolsure of fraud, the next step in the analysis to to determine whether the relators' qui tam complaint is "based upon the disclosed fraud."  *Poteet*, 552 F.3d at 514.  "A complaint is 'based upon' a public disclosure when it is 'supported by' the previously disclosed information."  *Id.*  (citing *McKenzie*, 123 F.3d at 940).  The Court must "look to whether substantial identity exists between the publicly disclosed allegations or transactions and the *qui tam* complaint."  *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 332 (6th Cir. 1998).  An action is jurisdictionally barred even if it is only "partly" based upon a public disclosure.  *Poteet*, 552 F.3d at 514; *McKenzie*, 123 F.3d at 940.

Existing case law provides limited guidance in determining whether the *qui tam* Complaint is "based upon" the publicly disclosed allegations in the 2005 Settlement Agreement. The *qui tam* Complaint alleges, in part, the exact same conduct that the Government alleged in the 2005 Settlement Agreement—that Nurses' Registry submitted improper claims to Medicare by upcoding.  The allegations in the  *qui tam* Complaint, however, pertain to an entirely different time period than the allegations in the Settlement Agreement.  Relators' allege that Nurses' Registry continued to upcode even after the 2005 Settlement Agreement. Relators argue there is no substantial identity between their allegations and the publicly disclosed allegations because the factual allegations in their Complaint are derived from their personal knowledge, not the

publicly disclosed allegations, and cover a different time period than the Settlement Agreement.

Nurses' Registry argues that time periods need not overlap as long as prior disclosure "set[s] the government squarely on the trail of the alleged fraud without [the relators'] assistance."  *United States ex. rel. Fine v. Sandia Corp.*, 197 F.3d 1014, 1019 (9th Cir. 1999). Nurses Registry contends that the 2005 Settlement Agreement put the Government squarely on the trail of the fraud alleged in the *qui tam* Complaint, because the Settlement Agreement bound Nurses' Registry to end its past practices and to refrain from upcoding in the future.  The Government contests this argument and states that nothing in the Settlement Agreement put it on notice that Nurses' Registry would be a repeat offender.

In their Complaint, the Relators allege that their knowledge about Defendant's upcoding comes from direct personal knowledge.  [DE 1 at 18-19].  At this stage in the proceeding, the Court must accept those factual allegations as true. Moreover, Relators' Complaint is devoid of facts about what the Government knew in relation to the Settlement Agreement and whether they were "on the trail of future fraud."  Again, the Court expects that this issue will be revisited on summary judgment, once the record is more factually developed.

As a final note, the Court of differing judicial interpretations of the FCA's definition of an original source.   For reasons previously stated, the Court will reserve these thorny issues for later in the proceeding.

     E.     Retaliation Claims

The FCA protects employees who pursue, investigate, or otherwise contribute to an action exposing fraud against the government.  The FCA, at 31 U.S.C. §3730(h), states:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms

or conditions of employment by his or her employer because of
lawful acts done by the employee on behalf of the employee or
others in furtherance of an action under this section, including
investigation for, initiation of, testimony for, or assistance in an
action filed or to be filed under this section, shall be entitled to all
relief necessary to make the employee whole.

To establish a claim for retaliatory discharge, a plaintiff must show: (1) she engaged in a
protected activity; (2) her employer knew that she engaged in the protected activity; and (3) her
employer discharged or otherwise discriminated against the employee as a result of the protected
activity.  *McKenzie v. BellSouth Telecomm., Inc.*, 219 F.3d 508, 513-514 (6th Cir. 2000).

"When seeking legal redress for retaliatory discharge under the FCA, plaintiff has the
burden of pleading facts which would demonstrate that defendants had been put on notice that
plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA
action brought by the government."  *United States ex. rel. Ramseyer v. Century Healthcare
Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996).

Defendants argue that Relators' retaliation claims must be dismissed because their action
of "internally reporting complaints" was insufficient to put Defendants on notice that Relators
were taking action in furtherance of a *qui tam* action or assisting in a *qui tam* action.  Relators
"must make clear their intentions of bringing or assisting in an FCA action in order to overcome
the presumption that they are merely acting in accordance with their employment obligations."
*Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 567-68 (6th Cir. 2003).

Relators allege that they complained about Nurses' Registry's fraudulent practices and
those complaints "put Defendant on notice that Relators' complaints could lead to *qui tam* action
under the False Claims Act."  [DE 1 at 36, 37].  In their Complaint, Relators never allege that
they "ma[de] clear their intentions of bringing or assisting in an FCA action."  *Yuhasz*, 341 F.3d

24

at 568.  Plaintiffs do not plead facts that Defendants "had been put on notice that [they] w[ere] either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government." *United States ex. rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir.1996).  Relators allege that Nurses' Registry was on notice that their complaints "could lead to *qui tam* action under the False Claims Act."  To survive a motion to dismiss, however, Relators must plead facts that their actions put Nurses' Registry on notice that they were actually pursuing or assisting an FCA action—not just that their complaints could lead to an FCA action sometime in the future. Accordingly, Defendants' motion to dismiss is **GRANTED** in part **and** Relators' retaliation claims are **DISMISSED.**

<u>**CONCLUSION**</u>

For the reasons discussed above, Defendants' Motion to Dismiss the Complaint in Intervention [DE 50] is **GRANTED** in part and **DENIED** part. The following Government claims survive:

1)     Claims against Nurses' Registry relating to alleged upcoding claims for payment, falsifying medical records and providing unnecessary services:

      a.     All FCA, payment by mistake, and unjust enrichment claims accruing on or after January 1, 2004, are timely; and

      b.     All common law fraud claims accruing on or after March 18, 2005, are timely.

2)     Claims against Nurses' Registry relating to alleged illegal remuneration:

      a.     All FCA, unjust enrichment, and payment by mistake claims accruing on or after September 2, 2005, are timely; and

25

   b.  All common law fraud claims accruing on or after September 2, 2008, are

      timely.

 3)  Claims against Lennie and Vicki House:

   a.  All FCA, unjust enrichment, and payment by mistake claims accruing on

      or after September 2, 2005, are timely; and

   b.  And common law fraud claims accruing on or after September 2, 2008, are

      timely.

For the reasons discussed above, Defendants' Motion to Dismiss the *qui tam* Complaint [DE 59] is **GRANTED in part.** Relators' retaliation claims are DISMISSED. However, the motion is **DENIED in all other respects.**

Finally, Relators' Motion for Leave to File Amended Complaint [DE 63] is **GRANTED.**

Accordingly, it is **ORDERED** that:

 1)  Defendants' Motion to Dismiss the Complaint in Intervention [DE 50] is

    **GRANTED** in part and **DENIED** in part consistent with this Opinion;

 2)  Defendants' Motion to Dismiss the *qui tam* Complaint [DE 59] is **GRANTED** in

    part and **DENIED** in part in accordance with this Opinion; and

 3)  Relators Motion for Leave to File Amended Complaint [DE 63] is **GRANTED.**

So ORDERED.

Dated this 2nd day of October, 2012.



**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**