UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **ALISIA ROBINSON-HILL and DAVID A. PRICE,** <br><br>     **Plaintiffs,** <br><br> **V.** <br><br> **NURSES' REGISTRY AND HOME HEALTH CORP., LENNIE G. HOUSE, and VICKI S. HOUSE,** <br><br>     **Defendants.** | **CIVIL ACTION NO. 5:08-145-KKC** <br><br><br> **<u>MEMORANDUM OPINION AND ORDER</u>** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the United States' Motion to Substitute the Estate of Lennie G. House (the "Estate") for the recently deceased defendant, Lennie G. House ("Mr. House"), pursuant to Federal Rule of Civil Procedure 25(a)(1). (DE 248). For the reasons stated below, the Government's motion will be granted.

**I. Background**

On March 18, 2008, Relators Alisia Robinson-Hill and David Price filed an action against their former employer, Nurses' Registry and Home Health Corporation ("Nurses' Registry"), pursuant to the *qui tam* provisions of the False Claims Act ("FCA"). (DE 1). The United States intervened (DE 29) and filed its Complaint in Intervention on September 2, 2011 (DE 46). The Complaint in Intervention adds Mr. House, as well as his wife, Vicki S. House, as defendants. It also asserts claims against Mr. House under the False Claims Act, 31 U.S.C § 3729(a)(1), in addition to common law claims for fraud, unjust enrichment, and payment by mistake.

Mr. House died on February 23, 2015, and the Court was formally notified of his death on March 3, 2015 (DE 233). On March 26, 2015, an order probating Mr. House's will and appointing an executor of the Estate was entered by the Scott County District Court. (DE 248-2). The United States now requests that the Estate be substituted for Mr. House as a defendant in this matter. (DE 248). Nurses' Registry and Mr. House oppose the Government's motion, arguing that that all of the claims asserted against Mr. House abate with his death. (DE 251).

**II. Abatement of Actions**

Rule 25(a)(1) of the Federal Rules of Civil Procedure governs substitution when one party dies in the course of litigation. A timely motion for substitution can be granted only with respect to claims that are not extinguished by death. Fed. R. Civ. P. 25(a)(1).

**A. FCA Claims**

When assessing whether a federal cause of action survives the death of a party, the Court first considers the statute creating the claim in search of the intent of Congress. *United States ex rel. Neher v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1994). If the statute does not resolve the matter, the survival of a federal claim is a question of federal common law. *Id.* (citing *James v. Home Constr. Co. of Mobile*, 621 F.2d 727, 729 (5th Cir. 1980)). Here, nothing in the FCA or its legislative history indicates the drafters' intent with respect to survivability. *See* 31 U.S.C. § 3729 *et seq.*; *NEC Corp.*, 11 F.3d at 137. There is, however, a federal statute that provides that "[a] civil action for damages commenced by or on behalf of the United States . . . shall not abate on the death of a defendant but shall survive and be enforceable against his estate as well as against surviving defendants." 28 U.S.C. § 2404. Section 2404 is applicable if the recovery sought by the United States is remedial in nature, but not if it is deemed punitive. *See United States v. Price*, 290 F.2d 525, 526 (6th Cir. 1961)

(per curiam). Thus, the Court will turn to federal common law to determine whether the FCA claims asserted against Mr. House are remedial or punitive in nature.

"A remedial action is one that compensates an individual for specific harm suffered, while a penal action imposes damages upon the defendant for a general wrong to the public." *NEC Corp.*, 11 F.3d at 137. It is well settled that remedial actions survive the death of a party, while punitive actions do not. *Schreiber v. Sharpless,* 110 U.S. 76, 80 (1884); *NEC Corp.*, 11 F.3d at 137; *Price*, 290 F.3d at 526. In deciding whether a statute is penal or remedial in nature, the Court must examine three factors: "1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harmed suffered." *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 209 (6th Cir. 1977).

Application of the *Murphy* factors indicates that the FCA is primarily a remedial statute. First, the purpose of the FCA is to redress individual harms, rather than wrongs to the general public. *NEC Corp.,* 11 F.3d at 137. "The government's recovery against a FCA defendant is intended to compensate the government for damages suffered as a result of the defendant's actions." *Id.* at 137–38 (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 551–52 (1943)); *see also United States ex rel. Semtner v. Med. Consultants Inc.*, 170 F.R.D. 490, 494 (W.D. Okla. 1997) ("It is axiomatic that the government can act, just as an individual, to recover damages it has incurred without that action becoming penal or punitive solely by virtue of the government's presence."). Further, *qui tam* relators suffer considerable harm such as the "severe emotional strain due to the discovery of his unwilling involvement in fraudulent activity" and the "substantial financial burdens as a result of the time and expense involved in bringing a *qui tam* action." *NEC Corp.*, 11 F.3d at 138.

Moreover, the ramifications on a relator's employment can be substantial as the relator is faced with the choice of "keeping silent about the fraud, and suffering potential liability (and guilty consciences), or reporting the fraud and suffering repercussions, some as extreme as dismissal." *Id.* (citing *United States ex rel. Robinson v. Northrop Corp.*, 824 F. Supp. 830, 835 (N.D. Ill. 1993)). Therefore, the Court finds that the FCA is intended to redress the individual wrongs to the United States and the *qui tam* relators.

Application of the second factor highlights the remedial nature of the FCA. Recovery under the FCA does not run to the general public. Instead, the recovery runs to the United States and to the *qui tam* relators as compensation for damages. *See* 31 U.S.C. §§ 3729(a), 3730(d); *see also NEC Corp.*, 11 F.3d at 138 ("Like the government's recovery, the recovery of the *qui tam* relator runs directly to the injured party as compensation for specific damages resulting from the defendant's wrongful activities.").

Lastly, the Court cannot say that the recovery authorized by the FCA is wholly disproportionate to the harm suffered by the Government and the relators. Defendants rely on *Vermont Agency of National Resources v. United States ex rel. Stevens,* 529 U.S. 765 (2000), for the position that the treble damages provision of the FCA is punitive. In *Stevens*, the Supreme Court stated that the current version of the FCA was "essentially punitive" because "[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, and not to ameliorate the liability of wrongdoers." *Stevens*, 529 U.S. at 784–86 (citations omitted). However, the Supreme Court later revisited the nature of the FCA and noted that "treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives." *Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 130 (2003). The *Chandler* Court explained that "[t]here is no question that some liability beyond the amount of fraud is usually 'necessary to compensate

the Government completely for the costs, delays, and inconveniences occasioned by fraudulent claims.'" *Id.* (quoting *United States v. Bornstein*, 423 U.S. 303, 315 (1976)). The Court noted that "[t]he most obvious indication that the treble damages ceiling has a remedial place under this statute is its *qui tam* feature with its possibility of diverting as much as 30 percent of the Government's recovery to a private relator who began the action." *Id.* at 131. But even when there is no *qui tam* relator to be paid, treble damages may be necessary for full recovery, especially considering the FCA has no separate provision for prejudgment interest and does not "provide for the consequential damages that typically come with recovery for fraud[.]" *Id.* (citation omitted). In light of *Chandler*, the Court does not find that the recovery authorized by the FCA is wholly disproportionate to the harmed suffered.

Consideration of the *Murphy* factors convinces the Court that the FCA is primarily remedial in nature. Accordingly, the Government's FCA claims against Mr. House constitute "civil claim[s] for damages" under 28 U.S.C. § 2404, and they survive Mr. House's death and may be asserted against his Estate pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure. This decision is consistent with the rulings of other courts that have considered whether FCA claims survive the death of a defendant. *See United States v. Woodbury*, 359 F.2d 370, 373–75 (9th Cir. 1966)(holding civil action for damages and forfeiture for making false claims under 31 U.S.C § 231 does not abate upon the defendant's death); *United States v. TDC Mgmt. Corp.*, No. 89-1533, 2014 WL 1286214, at *1–2 (D.D.C. Apr. 1, 2014) (holding FCA claims are not extinguished by the death of a defendant); *United States ex rel. Klaczak v. Consolidated Med. Transp., Inc.*, No. 96-C-6502, 2002 WL 31010850, at *6–7 (N.D. Ill. Sept. 9, 2002) (holding FCA claims survive death of a defendant pursuant to 28 U.S.C. § 2404).

## B. Common Law Claims for Fraud, Unjust Enrichment, and Payment by Mistake

The United States' common law claims for fraud, unjust enrichment, and payment by mistake also survive Mr. House's death. "The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid." *United States v. Medica-Rents Co.*, 285 F. Supp. 2d 742, 776 (N.D. Tex. 2003) (quoting *United States v. Wurts*, 303 U.S. 414, 415 (1938)). "No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute." *United States v. Halifax Hosp. Med. Ctr.*, No. 6:09-cv-1002-Orl-31TBS, 2013 WL 6017329, at *7 (M.D. Fla. Nov. 13, 2013) (citing *Wurts*, 303 U.S. at 415).

"Because the assertion of these common-law claims involves rights of the United States under a nationwide federal program, federal common law governs these claims." *United States v. Rogan*, 459 F. Supp. 2d 692, 721 (N.D. Ill. 2006), *aff'd,* 517 F.3d 449 (7th Cir. 2008); *see also United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 606 (8th Cir. 1999); *Halifax Hosp. Med. Ctr.*, 2013 WL 6017326, at *7; *United States ex rel. Roberts v. Aging Care Home Health Inc.*, 474 F. Supp. 2d 810, 820 (W.D. La. 2007). As discussed above, under federal common law remedial actions survive the death of a party, while penal actions do not. *Schreiber,* 110 U.S. at 80. Recovery on a claim for fraud is limited to the amount improperly provided to the defendant. *Rogan*, 459 F. Supp. 2d at 728. Further, recovery on a claim for payment by mistake is limited to that portion of the payment in excess of the actual amount owed. *United States v. Mead*, 426 F.2d 118, 124–25 (9th Cir. 1970); *Rogan*, 459 F. Supp. 2d at 728. Lastly, recovery on a claim for unjust enrichment is limited to the amount of the benefits improperly received by the defendant. *Rogan*, 459 F. Supp. 2d at 728. Thus, with these common law claims, the United States may

recover the amounts wrongfully or erroneously paid to defendants by the Medicare program, but the Government is not entitled to recover any penalties or punitive damages. Therefore, these claims are remedial in nature constitute "civil claim[s] for damages" under 28 U.S.C. § 2404. Accordingly, pursuant to Section 2404, the United States' common law claims for fraud, unjust enrichment, and payment by mistake survive Mr. House's death and may be enforced against his Estate.

Nurses' Registry and Mr. House contend that Kentucky state law governs the survivability of these common law claims, but they cite no controlling authority for that position. In any event, it appears that none of the common law claims asserted by the United States would abate under Kentucky state law. First, except for certain torts enumerated in K.R.S. § 411.140, tort actions survive the death of a party in Kentucky. Common law fraud is a tort, and it is not one of the exceptions to survival listed in the statute. Thus, the Government's fraud claim survives the death of Mr. House under Kentucky law. Second, causes of action founded on contracts survive the death of a party in Kentucky, *Moore's Adm'r v. Wagers' Adm'r*, 48 S.W.2d 15 (Ky. 1932), and because payment by mistake and unjust enrichment are equitable causes of action founded on contractual principles, it appears they would also survive under Kentucky state law. *See Union Cent. Life Ins. Co. v. Glasscock*, 110 S.W.2d 681 (Ky. 1937) (explaining that a party may seek unjust enrichment upon an implied-in-fact contract or quasi-contract).

### III. Conclusion

In sum, none of the causes of action in the government's Complaint in Intervention are abated upon the death of Lennie G. House. As there was a timely motion to substitute his Estate, the conditions of Rule 25(a)(1) have been satisfied. Accordingly, **IT IS ORDERED** that the United States' Motion to Substitute (DE 248) is **GRANTED.** The

recover the amounts wrongfully or erroneously paid to defendants by the Medicare program, but the Government is not entitled to recover any penalties or punitive damages. Therefore, these claims are remedial in nature constitute "civil claim[s] for damages" under 28 U.S.C. § 2404. Accordingly, pursuant to Section 2404, the United States' common law claims for fraud, unjust enrichment, and payment by mistake survive Mr. House's death and may be enforced against his Estate.

Nurses' Registry and Mr. House contend that Kentucky state law governs the survivability of these common law claims, but they cite no controlling authority for that position. In any event, it appears that none of the common law claims asserted by the United States would abate under Kentucky state law. First, except for certain torts enumerated in K.R.S. § 411.140, tort actions survive the death of a party in Kentucky. Common law fraud is a tort, and it is not one of the exceptions to survival listed in the statute. Thus, the Government's fraud claim survives the death of Mr. House under Kentucky law. Second, causes of action founded on contracts survive the death of a party in Kentucky, *Moore's Adm'r v. Wagers' Adm'r*, 48 S.W.2d 15 (Ky. 1932), and because payment by mistake and unjust enrichment are equitable causes of action founded on contractual principles, it appears they would also survive under Kentucky state law. *See Union Cent. Life Ins. Co. v. Glasscock*, 110 S.W.2d 681 (Ky. 1937) (explaining that a party may seek unjust enrichment upon an implied-in-fact contract or quasi-contract).

### III. Conclusion

In sum, none of the causes of action in the government's Complaint in Intervention are abated upon the death of Lennie G. House. As there was a timely motion to substitute his Estate, the conditions of Rule 25(a)(1) have been satisfied. Accordingly, **IT IS ORDERED** that the United States' Motion to Substitute (DE 248) is **GRANTED.** The

Clerk of the Court is **DIRECTED** to substitute the Estate of Lennie G. House for individual defendant Lennie G. House and to terminate Lennie G. House as a defendant in this matter.

Dated May 27, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY