UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ALISIA ROBINSON-HILL and DAVID A. PRICE,<br><br>    **Plaintiffs,**<br><br>V.<br><br>NURSES' REGISTRY AND HOME HEALTH CORP., and ESTATE OF LENNIE G. HOUSE,<br><br>    **Defendants.** | CIVIL ACTION NO. 5:08-145-KKC<br><br><br><u>MEMORANDUM OPINION AND ORDER</u> |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendants' joint motion for partial summary judgment. (DE 267).[1] Defendants contend that specific instances of remuneration fall within an exception to the Stark Law, and, therefore, Defendants are entitled to judgment as a matter of law as to those transactions. For the following reasons, Defendants' motion will be denied.

**I. Introduction**

This is a False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, case that started as a *qui tam* action filed by Relators, Alisia Robinson-Hill and David Price, against their former employer, defendant Nurses' Registry and Home Health Corporation ("Nurses' Registry"). (DE 1). The United States elected to intervene and filed its Complaint in Intervention in

---

[1] This motion was filed jointly filed by defendants Nurses' Registry and Home Health Corporation, Lennie G. House, and Vicki S. House on May 21, 2015. Thereafter, the Estate of Lennie G. House was substituted as the proper party in this action (DE 273), and all claims against Vicki S. House were dismissed pursuant to a settlement agreement (DE 293). Accordingly, the remaining defendants asserting this motion are Nurses' Registry and Home Health Corporation and the Estate of Lennie G. House.

September 2011. (DE 46). In its Complaint in Intervention, the Government adds Lennie House and Vicki House as defendants and alleges extensive Medicare fraud under multiple theories. (DE 46). Relevant to the instant motion, the United States alleges that between March 2006 and August 2010, Defendants violated the FCA by falsely certifying that numerous claims were in compliance with the Stark Law, 42 U.S.C. § 1395nn. Defendants now move for partial summary judgment, contending that certain instances of remuneration fall within the "non-monetary compensation exception" to the Stark Law, and, therefore, cannot form the basis for liability under the FCA. (DE 267).

## II. Factual Background

The facts of this action are more fully recounted elsewhere in the record of this case. Only those facts necessary to decide Defendants' present motion are set forth below.

Nurses' Registry is a home health care agency that is headquartered in Lexington, Kentucky. When this action was initiated, Lennie House was the president of Nurses' Registry, and his wife, Vicki House, was the company's secretary. The Houses were co-directors of Nurses' Registry's governing board.

As part of its regular business practice, Nurses' Registry provided items of value to physicians who referred patients to the company. (DE 157-13 V. House Dep. at 78; DE 157-14 Gray Decl. at ¶ 3.) Many of these distributions occurred through Nurses' Registry's marketing department. (DE 157-13 V. House Dep. at 78; DE 157-14 Gray Decl. at ¶ 3.) For example, in or around December 2008, Nurses' Registry sent gift baskets to a number of individuals, including referring physician Dr. Danilo Corales. (DE 157-38). Additionally, many referring physicians—including Drs. Bradford Fine, Stella Staley, and Michelle Welling—were invited to a private event hosted by Defendants at Keeneland race track in October 2009. (DE 157-34; DE 157-35; DE 157-36). Further, in March 2010, Defendants invited referring doctors to "Coach's Night" events, radio shows hosted by the coaches of the

University of Kentucky football and basketball teams and sponsored by Nurses' Registry. (DE 157-4 Steketee Dep. at 47-49.) Drs. Ralph Alvarado, Robert Davenport, and Michael Noble were among the referring physicians that attended Coach's Night events at the invitation of Nurses' Registry. (DE 157-30; DE 157-31; DE 157-33).

The United States alleges that, *inter alia*, these seven instances of remuneration—a gift basket to Dr. Corales; Keeneland event tickets to Drs. Fine, Staley, and Welling; and Coach's Night tickets to Drs. Alvarado, Davenport, and Noble—created "financial relationships" between Nurses' Registry and the referring physicians for purposes of the Stark Law. (DE U.S. Compl. at 43.) Therefore, due to the existence of these "financial relationships," the Government contends that Nurses' Registry violated the Stark Law when it submitted claims for payment to Medicare for services referred by those doctors. (DE U.S. Compl. at 43.) According to the United States, Defendants then falsely certified compliance with the Stark Law, thereby giving rise to liability under the FCA. (DE U.S. Compl. at 43-44.)

Defendants now move for partial summary judgment, claiming that these seven specific instances of remuneration fall within the "non-monetary compensation" exception to the Stark Law, and, therefore, cannot form the basis for liability under the FCA. (DE 267). Defendants' motion is now ripe for disposition.

**III. Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Rule 56(c)

3

mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The movant may meet this burden by demonstrating the lack of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322–25. Once the movant meets this burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (internal quotation marks omitted).

In evaluating the evidence, the court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## VI. Discussion

### A. The Stark Law Framework

Simply stated, the Stark Law prohibits physicians from making patient referrals for "designated health services," including home health services, if the referring physician (or immediate family member) has a "financial relationship" with the entity providing the services. 42 U.S.C. § 1395nn(a)(1)(A). The Stark Law further proscribes the entity from presenting or causing to be presented a Medicare claim for services furnished pursuant to a

prohibited self-referral. 42 U.S.C. § 1395nn(a)(1)(B).[2] Thus, because "designated health services" includes home health services, and because "referral" includes the establishment of a plan of care, certification, or re-certification of a patient's need for such services, the Stark Law prohibits a home health agency from submitting claims to Medicare for services provided to a patient when the home health agency has a financial relationship with the patient's referring physician. *See* 42 U.S.C. § 1395nn(h)(6)(I) (defining "designated health service"); 42 U.S.C. § 1395nn(h)(5)(B) (defining "referral"); 42 C.F.R. § 411.351 (defining "referral").

Under the Stark Law, a "financial relationship" includes any "compensation arrangement" between the provider and the referring physician. 42 U.S.C. § 1395nn(a)(2). "Compensation arrangement," in turn, is defined as "any arrangement involving any remuneration between a physician (or an immediate family member of such physician) and an entity." 42 U.S.C. §1395nn(h)(1)(A). "Remuneration," with certain exceptions not applicable to the instance case, includes "any remuneration, directly or indirectly, overtly or covertly, in cash or in kind." 42 U.S.C. § 1395nn(h)(1)(B).

In addition to prohibiting health care entities from submitting claims under these circumstances, the Stark Law also prohibits the Medicare program from paying such claims. 42 U.S.C. § 1395nn(g)(1) ("No payment may be made under this subchapter for a

---

[2] In pertinent part, the Stark Law provides:
> [I]f a physician (or an immediate family member of such physician) has a financial relationship with an entity specified in paragraph (2), then—
>
> (A) the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this subchapter, and
>
> (B) the entity may not present or cause to be presented a claim under this subchapter or bill to any individual, third party payor, or other entity for designated health services furnished pursuant to a referral prohibited under subparagraph (A).

42 U.S.C.A. § 1395nn(a)(1).

5

designated health service which is provided in violation of subsection (a)(1) of this section."). If a health care entity submits prohibited claims and collects payment, the entity "must refund all collected amounts on a timely basis." 42 C.F.R. § 411.353(d).

The Stark Law and its regulations set forth several exceptions to its broad prohibition on financial relationships between health care entities and referring physicians, only one of which—the "non-monetary compensation" exception—is relevant to the instant motion. *See generally* 42 U.S.C. § 1395nn(b)-(e); 42 C.F.R. § 411.357. To fall within the non-monetary compensation exception, the compensation must "not exceed an aggregate of $300 per calendar year, as adjusted for inflation" and must satisfy all of the following conditions:

> (i) The compensation is not determined in any manner that takes into account the volume or value of referrals or other business generated by the referring physician.
>
> (ii) The compensation may not be solicited by the physician or the physician's practice (including employees and staff members).
>
> (iii) The compensation arrangement does not violate the anti-kickback statute (section 1128B(b) of the Act) or any Federal or State law or regulation governing billing or claims submission.

42 C.F.R. § 411.357(k)(1). Thus, regardless of aggregate annual value, the Stark Law's referral and billing prohibitions apply when a home health agency provides a referring physician with non-monetary compensation that takes into account the volume or value of that doctor's patient referrals *or* non-monetary compensation that was solicited by the physician or the physician's staff *or* non-monetary compensation that violates the Anti-Kickback Statute, 42 U.S.C. § 1320a–7b(b). *See id.*

The Government has the burden of establishing proof of each element of a violation under the Stark Law. *See United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 95 (3d Cir. 2009). Once this burden has been met, the burden shifts to the defendant to establish that its conduct was protected by a statutory or regulatory exception. *Id.*

6

Significantly, the Stark Law is a strict liability statute, *United States ex rel. Bartlett v. Ashcroft*, 39 F. Supp. 3d 656, 674 (W.D. Pa. 2014), and "no wrongful intent or culpable conduct is required." *Medicare and Medicaid Programs; Physicians' Referrals to Health Care Entities With Which They Have Financial Relationships*, 66 Fed. Reg. 856, 859 (Jan. 4, 2001).

### B. Defendants have not demonstrated that the remuneration at issue falls within the "non-monetary compensation" exception to the Stark Law.

Defendants do not dispute that that the particular instances of remuneration at issue—a gift basket, Keeneland event tickets, and Coach's Night tickets—violate the Stark Law unless an exception applies. (*See* DE 267.) The only exception Defendants rely upon is the "non-monetary compensation" exception set forth above. *See* 42 C.F.R. § 411.357(k)(1). Thus, the issue here is whether the "non-monetary compensation" exception applies to these specific transactions.

Defendants claim that the only reason the United States has alleged that these seven transactions do not satisfy the non-monetary compensation exception is because Nurses' Registry took into account the "volume or value" of the physician's patient referrals when providing these items. (DE 267-1 Defs.' Mem. at 8.) According to Defendants, the United States "concedes that the gifts were within the dollar limit, were not solicited, and did not result in a violation of the Anti-Kickback Statute." (DE 267-1 Defs.' Mem. at 8-9.) Thus, from Defendants' perspective, the only element of the non-monetary compensation exception in dispute is whether Nurses' Registry considered the "volume or value" of referrals from the physician when it supplied these items. (DE 267-1 Defs.' Mem. at 9.) Defendants assert that these transactions did not take into account the "volume or value" of the physician's referrals as that prohibition was interpreted in *United States ex rel.*

7

*Villafane v. Solinger*, 543 F. Supp. 2d 678 (W.D. Ky. 2008), and, therefore, each element of the non-monetary compensation exception is satisfied.

In response, the United States contends that Defendants have failed to acknowledge that the Government has alleged that the transactions at issue do not satisfy the non-monetary compensation exception for *two* reasons: (1) Nurses' Registry considered the "volume or value" of the referrals from the recipient physicians when determining how to allocate these items; and *(2) the transactions violated the Anti-Kickback Statute, 42 U.S.C. § 1320a–7b(b).* (*See* DE 177-1; DE 177-2.) Thus, because the remuneration allegedly violates the Anti-Kickback Statute, the United States argues that Defendants cannot avail themselves of the non-monetary compensation exception regardless of whether they can demonstrate that these transactions did not take into account the "volume or value" of the physician's referrals. (DE 274 U.S. Mem. at 9.)

Indeed, the Government has alleged that each of the seven instances of remuneration at issue violates the Anti-Kickback Statute because the remuneration was intended to induce or reward referrals. (*See* 177-2.) The United States has provided evidentiary support for this argument, and the record evidence establishes genuine questions of material fact concerning whether the remuneration was provided with the intent to induce or reward referrals. (*See, e.g.*, DE 157-5 Langham Dep. at 33; DE 157-7 May Dep. at 11-12; DE 157-11 Bennington Dep. at 11; DE 157-14 Gray Decl. at ¶ 4.)

Therefore, because compliance with the Anti-Kickback Statute is a necessary element of the non-monetary compensation exception, and because there is a genuine issue of material fact as to whether these specific instances violated the Anti-Kickback Statute, summary judgment is inappropriate. As a result of this ruling, the Court finds it unnecessary to address Defendants' argument concerning the meaning of the phrase "volume or value" of referrals.

## V. Conclusion

Accordingly, for the reasons stated above, **IT IS ORDERED** that Defendants' joint motion for partial summary judgment (DE 267) is **DENIED.**

Dated July 15, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY